Filed 1/17/14  P. v. Leal CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057363 |
| v. | (Super.Ct.No. RIF10004097) |
| TONY EUSTOLIO LEAL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anthony Da Silva, and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Tony Eustolio Leal of three counts of lewd acts on a child under the age of 14 (counts 1-3 – Pen. Code, § 288, subd. (a)).[1] The court sentenced defendant to eight years imprisonment. On appeal, defendant contends the court abused its discretion by refusing to grant him probation. We affirm.

FACTS

The victim testified that when she was seven or eight years old, defendant married her mother and moved in with them. When she was nine years old, defendant first came into her room in the morning, before he went to work, and touched her inappropriately on her clothing over her vagina for between one and five minutes. The victim had awoken as soon as he came in the room, but kept her eyes closed. She did not tell defendant to stop because she was scared. She did not tell her mother because she was afraid her mother would not believe her.

Over the next two years, defendant continued to come into her bedroom before he went to work almost daily; he would remove her clothing and touch her vagina mostly skin-on-skin. Sometimes he would insert his finger inside her vagina. The victim would pretend to be asleep. Sometimes she would flinch or move away from him in an attempt to get him to stop, but it never worked.

One night, a friend of the victim's spent the night in her bedroom. The victim's friend testified she saw defendant come into the room, go over to the victim, and stand

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

before the victim with his arms outstretched towards the victim for five minutes. She testified she heard the victim mumble for defendant to get off of her and saw the victim move to get away from him.

Defendant left the room, but came back a few minutes later. In order to get him to leave, the victim's friend sat up; defendant came over to her, fixed her covers, and left. She asked the victim about the occurrence some time later; the victim responded that her mother and defendant had engaged in an argument regarding the victim's request to have a lock on her door.

Defendant's brother moved in with the family for several months. He testified that at night he twice heard "screams from the [victim] as though [defendant] was doing something bad to her, and she would scream." The victim would say "'No. Leave me alone.'" He saw defendant leave the victim's room twice around the same time he heard the victim's screams. He asked defendant what had happened, but defendant failed to respond. He asked the victim what had happened, but she replied that nothing had occurred.

Defendant's brother later asked the victim where she went to school; she told him. He then went and spoke to the principal of the victim's school to report what was occurring. While she was in Mexico in 2010, with her mother, defendant called her mother who then asked whether defendant had done something to her; the victim cried and told her what defendant had been doing to her.

3

When the victim returned home, the police and social services came to the home and questioned her. The victim's mother stayed with defendant after the victim made the allegations of sexual abuse. The victim's mother testified she had doubts about the victim's accusations and believed the victim may have made them because she was angry. The victim was placed in foster care for about six months. Defendant testified he never touched the victim inappropriately.

## DISCUSSION

Defendant contends the court abused its discretion in denying him probation because it improperly based its decision on defendant's refusal to admit the truth of the offense and the victim's mother's disbelief the molestation had occurred. We find the court acted within its discretion in denying defendant probation.

After defendant's conviction, the court ordered a section 288.1 report prepared for sentencing. In the section 288.1 report, Dr. Michael Kania determined defendant posed "a very low risk of reoffending." He opined defendant "would be able to comply with any of the conditions of probation, should the Court decide on a course of probation, either in lieu of or in addition to a period of incarceration." He concluded defendant "is not predatory, and thus the risk of reoffending outside the home is very low."

In his report, the probation officer noted that "[r]egardless of [defendant's] convictions, his wife continues to support him and believes he is innocent. She visits him in jail and writes letters to him. The defendant said his wife truly believes her daughter,

4

the victim, is lying about the instant matter." Mother reported to the probation officer that she "feels her daughter lied about the sexual abuse and her husband is innocent." She believed defendant should be set free. The probation officer reported that defendant's risk of sexual offense recidivism placed in him the low risk category and recommended a three-year grant of formal probation with a condition that he not live in the same home as the victim.

At the sentencing hearing, the court observed "I have to say I was disappointed in both the probation report and the [section] 288.1 report. I think they both underplay the seriousness and, frankly, the aspect of danger here." In particular, the court noted defendant's and the victim's mother's denial that any sexual molestation had taken place. "I would expect, before I have a grant of probation, to have the perpetrator take responsibility and make amends to the daughter; tell the mother that, yes, it did happen, support our daughter and get her treatment and help her through this."

The court further discoursed, "With the jury's verdict, I just can't see a grant of probation. That's crazy. And I don't see how the good doctor can say that the risk of offending – well, he's not predatory. If this isn't predatory, I don't know what is. This doesn't happen just on a few occasions. It happens on multiple occasions over several years, and how you say that's not predatory is beyond me. [¶] Low risk of reoffending? Where do you come up with that, especially when the defendant is saying it never

5

happened in the first place?  There's absolutely no insight on the defendant's behalf.  So to me, I think he poses a great risk."

Thus, the court denied defendant probation and imposed the upper terms on counts 1 through 3 based on the aggravating factors that the victim was especially vulnerable (Cal. Rules of Court, rule 4.421(a)(3))[2], defendant's offenses involved planning (rule 4.421(a)(8)), and defendant abused a position of trust in committing them (rule 4.421(a)(11)).  The court found the only mitigating factor was defendant's lack of a prior criminal record (rule 4.423(b)(1)).  "So I think the aggravating factors outweigh any mitigating factors."  Despite its recognition that it could impose consecutive terms for counts 2 and 3 (rule 4.421(a)(7)), the court imposed concurrent sentences.

"A trial court has broad discretion to determine whether a defendant is suitable for probation.  [Citation.]  . . . .  An appellant bears a heavy burden when attempting to show an abuse of such discretion.  [Citation.]  To establish abuse, the defendant must show that, under all the circumstances, the denial of probation was arbitrary, capricious or exceeded the bounds of reason.  [Citation.]" (*People v. Bradley* (2012) 208 Cal.App.4th 64, 89.)  "'California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice, . . .' [Citation.]" (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)

---

[2]  All further rule references are to the California Rules of Court.

6

Here, the record substantiated the court's finding of aggravating factors, only one of which was necessary to support a denial of probation. Defendant sexually molested his stepdaughter on an almost daily basis, at night, when she was asleep and no one else was awake, beginning when she was nine years old and continuing for two years. Thus, the victim was vulnerable, defendant took advantage of a position of trust, and planned his offenses in advance; ergo, the court's elucidation of aggravating factors supported its determination to deny defendant probation.

Defendant complains the court improperly denied him probation based on his refusal to admit his culpability and his wife's disbelief of the allegations against him. It is true that lack of remorse may not be a valid reason to aggravate an offense where a defendant continues to deny committing the offense even after conviction. (*People v. Key* (1984) 153 Cal.App.3d 888, 900-901 [where evidence supporting conviction is not overwhelming and is based on conflicting testimony].) Nevertheless, here, it was defendant's denial of the offense, mother's disbelief in the allegations, and, most importantly, defendant's repeated stated intention to return to the home which was cause for concern.

Indeed, Dr. Kania noted only that defendant posed a low risk of reoffending "outside the home." Dr. Kania reported defendant "indicates that should he receive a grant of probation in this case, he would help the victim receive treatment, and that he would have no problem returning to the home. (He seems to indicate that he had lived in

7

the home while out on bail.)  He states, however, that if he was unable to live with his wife, he would live with his older son in Riverside, as he would never ask his wife to remove her daughter from the house."  Further, "based upon his comments that the offenses were alleged to have occurred over a three-year period of time and that he has been convicted of them, there is some suggestion of pedophilia."

The probation officer reported defendant intended to reside with his wife and children upon release.  "If the Court allows him to return to his family when he is released, his wife will gladly take him back."  The probation officer "was unable to file a [social services] report in reference to the defendant stating he would be residing with his wife and children, including the victim, when he is released from custody.  The social worker stated a report could not be made until the defendant was physically residing in the same residence as the victim."

"Of great concern is the defendant's statement that he will return to live with his family after his release from custody.  According to the defendant, the victim continues to live at home with the family as well.  It is felt the victim's safety would be in jeopardy if the defendant were allowed to reside in the same residence, as the mother has expressed the defendant is innocent of his actions and she believes her daughter is lying about the molestation, which the defendant was convicted of.  This can have a negative impact on the victim's psychological and emotional state if she is forced to live with the individual who sexually molested her.  It is unknown what the defendant's intentions would be

8

toward the victim if he is able to reside with her once more and whether he would continue to violate her."

Thus, there was some legitimate concern that defendant, despite probationary terms to the contrary, would be permitted to live in mother's home with the victim should he be granted probation. This, in and of itself, would also support a denial of probation as the court's reasoning inferentially suggests it did not believe defendant would abide by conditions of probation requiring that he not live with or have any contact with the victim. In any event, the other three aggravating factors found by the court were sufficient to support its denial of probation. The court acted within its discretion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

9